## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

AMERICAN NEIGHBORHOOD MORTGAGE
ACCEPTANCE COMPANY, LLC,                     Case No.
a limited liability company,                     Hon.

     Plaintiff,

v.

PEYTON ELIZABETH FULLERTON, an
individual,

     Defendant.

---

## COMPLAINT

Plaintiff, AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC D/B/A ANNIEMAC HOME MORTGAGE ("AnnieMac"), by and through undersigned counsel, states as follows for its Complaint against Defendant, PEYTON ELIZABETH FULLERTON ("Former Employee"):

## PARTIES, JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different States and the amount in controversy exceeds $75,000.00.

2.    AnnieMac is a limited liability company organized under Delaware law. AnnieMac has two members – (1) Hyperion Family Holding Company LLC ("Hyperion"); and (2) an individual domiciled in Pennsylvania.  Hyperion in turn has a single member - an individual who is domiciled in Puerto Rico.  Therefore, AnnieMac is deemed to be a citizen of

Puerto Rico and Pennsylvania, only, for purposes of diversity jurisdiction.  See *Lincoln Ben Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104-105 (3rd Cir. 2015).

3.     Former Employee is an individual who, upon information and belief, is domiciled in Colorado and therefore a citizen of Colorado, only, for purposes of diversity jurisdiction.  *See id*.

4.     AnnieMac and Former Employee entered into a Branch Manager Employment Agreement (**Exhibit A**, "Agreement"), effective on July 1, 2022, which states as follows in Article VII, § 6.7:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey and federal law.  In the event of any litigation, the parties hereto irrevocably consent to the exclusive jurisdiction of the state courts in Burlington County and/or the U.S. District Court for the District of New Jersey in Camden New Jersey.

5.     This Court has personal jurisdiction over Former Employee, including because she has consented to the jurisdiction of this Court by virtue of Section 6.7 of the Agreement and otherwise has constitutionally sufficient contacts with New Jersey.  *See Park inn Intern., L.L.C. v. Mody Enterprises, Inc.*, 105 F.Supp.2d 370, 373-374 (D. N.J. 2000).

6.     Venue also is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the District of New Jersey is a judicial district in which a substantial part of the events or omissions giving rise to AnnieMac's claim occurred and by virtue of Section 6.7 of the Agreement.

## GENERAL ALLEGATIONS

7.     Effective July 1, 2022, AnnieMac and Former Employee entered into the Agreement, which governed the terms of Former Employee's at-will employment with AnnieMac.  (*See* Agreement, Article I § 1.1).

8.     The Agreement incorporates and includes several documents and "Addendums," including Addendum III titled "Loan Compensation Addendum."

9.     The Loan Compensation Addendum to the Agreement signed by Former Employee states in relevant part:

> Employee will receive a retention bonus* in the amount of $250,000.00 per pay period for the following pay dates only:
>
> - July 8, 2022;
> - July 25, 2022
>
> This retention bonus will be paid in accordance with AnnieMac standard payroll procedures subject to applicable state and federal tax withholdings and deductions for employee contributions to employer sponsored insurance benefits. This retention bonus will not exceed $500,000.00. In the event that Employee resigns or separates from employment for any reason, all retention bonus compensation scheduled to be paid after separation date shall be forfeited immediately.
>
> ***In the event that Employee voluntarily terminates employment with the Company or employment with the Company is terminated for cause at any point prior to the expiration of eighteen (18) months following receipt of the retention bonus, Employee agrees that he or she will be responsible for reimbursing the Company for the balance of this retention bonus paid to Employee.*** Any repayment amount due shall become due and payable to the Company immediately upon demand. Employee hereby authorizes said payment, should it become necessary, to be deducted from any severance or final pay received upon termination of employment. ***Should it become necessary for the Company to collect any payment due, Employee agrees to pay the Company for all reasonable costs of collection and/or litigation, including necessary and reasonable attorneys' fee.***  (Agreement, Loan Compensation Addendum, Article II(b), p. 13 of 18) (emphasis added).

10.     In accordance with the Agreement, AnnieMac paid Former Employee a retention bonus totaling $500,000.00 by making two separate $250,000.00 payments to Former Employee on July 8, 2022 and July 22, 2022 (collectively, the "Retention Bonus").

11.     As a result, in order to be entitled to keep any portion of the Retention Bonus, Former Employee could not voluntarily terminate her employment or be terminated for cause by AnnieMac "prior to the expiration of eighteen (18) months following receipt of the retention

bonus."  (Agreement, Loan Compensation Addendum, Article II(b), p. 13 of 18) (this 18-month period following payment of the Retention Bonus shall be referred to hereinafter as the "Retention Bonus Period").

12.     However, Former Employee did in fact voluntarily terminate her employment by letter dated January 27, 2023, which was well prior to the expiration of the Retention Bonus Period.

13.     Pursuant to its right in Article II(b) of the Loan Compensation Addendum, AnnieMac deducted the sum of $3,863.37 from Former Employee's final pay to claw-back a portion of the Retention Bonus.

14.     Thus, Former Employee became obligated to repay the balance of the Retention Bonus back to AnnieMac upon demand.

15.     To date, Former Employee has failed, refused, and/or neglected to pay back the remaining $496,136.63 balance of the Retention Bonus despite demand.

16.     Former Employee thus is obligated to pay AnnieMac the total sum of $496,136.63, together with interest, costs and attorney fees (the "Claw-Back Debt").

17.     The Agreement is a valid and binding obligation of the parties.

18.     AnnieMac complied with the terms of the Agreement.

19.     Former Employee, on the other hand, materially breached her obligations under the Agreement, including by failing to pay the Claw-Back Debt upon demand.

20.     Former's Employee's material breaches of contract have proximately caused AnnieMac to suffer damages at least in the amount of the Claw-Back Debt.

## COUNT I
## BREACH OF CONTRACT

21.     AnnieMac incorporates and adopts the preceding allegations by reference as if fully restated herein.

22.     The Agreement is a valid and enforceable agreement between AnnieMac and Former Employee.

23.     AnnieMac performed its obligations under the Agreement, including by paying the Retention Bonus to Former Employee.

24.     Former Employee did not earn the Retention Bonus because she voluntarily terminated her employment with AnnieMac before the expiration of the Retention Bonus Period.

25.     Former Employee materially breached the Agreement, including by failing, refusing, and/or neglecting to return the Retention Bonus and otherwise pay the Claw-Back Debt to AnnieMac upon demand following Former Employee's voluntary separation from the company.

26.     Former Employee's material breaches of the Agreement have proximately caused AnnieMac to suffer damages of at least $496,136.63, together with interest, costs and attorney fees.

**WHEREFORE,** Plaintiff AnnieMac respectfully requests that this Honorable Court enter judgment in its favor and against Former Employee in an amount no less than $496,136.63, together with interest, costs and attorney fees, and grant such further relief in AnnieMac's favor as this Court may deem just and appropriate.

Respectfully submitted,

COLE SCHOTZ P.C.

*/s/ Connor M. Mannion*
Court Plaza North, 25 Main Street
PO Box 800
Hackensack, NJ 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile

Dated: June 26, 2023

# EXHIBIT A

BRANCH MANAGER EMPLOYMENT AGREEMENT

THIS BRANCH MANAGER EMPLOYMENT AGREEMENT ("Agreement") is made this 1st day of July 2022 (the "Effective Date"), between American Neighborhood Mortgage Acceptance Company LLC, ("Employer"), and Peyton Elizabeth Fullerton ("Employee") (Employer and Employee sometimes referred to herein as the "Parties").

ARTICLE I

TERM OF EMPLOYMENT

1.1 Employer hereby employs Employee, and Employee hereby accepts employment with Employer, on the terms and conditions set forth in this Agreement. The Parties mutually understand agree that employment with Employer and compensation will be on an "at will" basis and that this Agreement does not contain or constitute a guarantee of employment for any specific period. At any time and for any reason, Employer may terminate Employee's employment with or without cause or notice other than required by law.  Employee may resign or terminate his/her employment, but acknowledges that, if he/she resigns, the Employer will need a certain period of time to locate a replacement. Accordingly, Employee agrees to give at least two weeks' notice prior to the effective date of Employee's resignation. However, Employer, at its absolute discretion, may instruct Employee to leave earlier, and if so requested, Employee shall do so and his/her employment shall end as of such earlier date designated by Employer. Employee understands and agrees that this at-will employment relationship may not be modified by any oral or implied agreement, and that no employee handbook, manual nor any course of conduct, practice, policy, commission, award, incentive, bonus, pay increase, promotion, performance evaluation, transfer or length of service can modify this at-will relationship.

1.2 Employee's employment is subject to a satisfactory background and reference check, which determination shall be in Employer's sole and absolute discretion. Employee, as a condition of employment, agrees to authorize Employer in writing to contact any organization or individual that Employee has listed on his/her resume or employment application or mentioned in job interviews and obtain from them any relevant information about Employee, including without limitation Employee's job qualifications, including experience, skills and abilities.

1.3 As a material inducement to Employer to enter into and perform this Agreement, Employee makes the following additional representations, warranties, and covenants: (i) as of the Effective Date, Employee represents, warrants, and covenants that Employee is not subject to and/or bound by any confidentiality, non-competition or other agreement with, and has no obligation to, any other person or entity that would prohibit or restrict Employee from entering into this Agreement or fully performing Employee's obligations under this Agreement; (ii) as of the Effective Date and during the term of this Agreement, Employee represents, warrants, and covenants that Employee is not employed in any other real estate-related business and, except as described herein, does not perform any "settlement services," as such term is defined in the Real Estate Settlement Procedures Act and the regulations promulgated thereunder, as amended from time to time; (iii) during the term of this Agreement, Employee represents, warrants, and covenants that Employee will not accept compensation for any of the services performed by Employee on behalf of Employer, except for such compensation paid by Employer to Employee, as is expressly provided for in this Agreement; and (iv) as of the Effective Date, Employee represents, warrants, and covenants that Employee's agreements and covenants under Section 1.3 are an essential part of the inducement to Employer to enter into and perform this Agreement.

ARTICLE II

Revised: April, 2021

Initial

DUTIES OF EMPLOYEE

2.1 Employee is hereby employed as a **(please circle applicable one)** Originating / Non-Originating Branch Manager (as circled an "Originating Branch Manager" or "Non-Originating Branch Manager", sometimes referred to herein as a "Branch Manager") for Employer at the Denver, Colorado office (referred to herein as the "Branch"). If employed as an Originating Branch Manager, Employee shall actively solicit, originate, negotiate, secure, process, and administer the closing of residential mortgage loans in accordance with all applicable Laws and as specifically directed by Employer, and shall perform any other duties requested by Employer, including the supervision and management of Employer's employees in the Branch. If employed as a Non-Originating Branch Manager, Employee shall perform these services, except that Employee shall not: take residential mortgage loan applications; negotiate terms of residential mortgage loans; offer, arrange, assist a consumer in obtaining or applying to obtain residential mortgage loans; otherwise obtain or make residential mortgage loans for another person; or, through advertising or other means of communication represents to the public that Employee can or will perform any of these activities.

2.2 Employee shall devote the Employee's entire productive time, ability, and attention to the business of the Employer during the term of this Agreement. Employee shall not directly or indirectly render any commercial or professional services to any other person or organization, whether for compensation or otherwise, without the prior written consent of Employer, which consent may be withheld, delayed, or otherwise conditioned in Employer's sole and absolute discretion.

2.3 In addition to being bound by the terms of this Agreement, Employee is also bound by the terms of Employer's rules, policies, procedures and Employee Handbook, which are all subject to change at any time at the Employer's sole discretion.  Subject to the provisions of Section 1.1 of this Agreement, in the event that there is a conflict between this Agreement and Employer's rules, policies, procedures or Employee Handbook, the Employer's rules, policies, procedures and Employee Handbook shall control.

2.4 Employee may not execute any contract or agreement of any kind on behalf of the Branch or Employer.  Any and all contracts and agreements that are needed to operate Branch shall only be executed by the Employer and in the Employer's name only.  The following positions have the sole authority to execute documents on behalf of Employer.

Chief Executive Officer
President

Notwithstanding the foregoing, and for purposes of executing applications for Federal Housing Administration ("FHA") mortgage insurance only, Employee shall have authority to bind Employer in matters involving the origination and servicing of mortgages insured under the FHA mortgage insurance program pursuant to FHA regulations and rules, as such may be amended and /or supplemented from time to time.

2.5 Employee shall provide all forms of advertising and advertising copy to Employer prior to such advertising being placed or distributed and Employer shall have the right to approval or disapprove such advertising in Employer's sole and absolute discretion.

2.6 Employee shall use only such business forms and documents as Employer shall promulgate or approve in writing in Employer's sole and absolute discretion and Employee shall cause other Branch employees to comply with such restrictions.

2.7 Employee shall have all applicable individual licenses (i.e., other than those licenses required to be held by Employer) required of Employee by applicable Laws, and shall be responsible for paying all license fees, education fees, or other related fees (collectively "Licensing Fees"), if any are required, in a timely manner to maintain state and federally mandated professional licensing; provided, however, that during the term hereof Employer shall promptly reimburse Employee for such Licensing Fees incurred by Employee in the normal and ordinary course of Employee's

Revised: April, 2021

DocuSign Envelope ID: DF497574-191D-4898-9D52-E22A0955A57C

duties under this Agreement to the extent submitted by Employee to Employer in accordance with Employer's reimbursement policies and procedures.

2.8 Employee agrees to hold all monies received by Employee in the normal and ordinary course of Employee's duties under this Agreement (other than compensation paid by Employer to Employee) in trust for the benefit of Employer. Employee agrees to immediately deliver to Employer or deposit as directed by Employer all monies and checks made payable to Employer and received by Employee for Employer. Employee is responsible for ensuring that all applicable Branch employees are disclosing or collecting, as applicable, from loan applicants all fees for the payment of appraisals, credit reports and other charges by third parties in connection with the origination and servicing of mortgage loans originated by the Branch in accordance with Employer's policies and procedures.

2.9 Employee agrees that:

A. Employee will refrain from using any name other than the full name of the Employer or an Employer approved "doing business as" (DBA) name in any business ventures or advertising, unless required by any state licensing requirements or applicable Laws;

B. Employee in his/her capacity as a Branch Manager shall comply, and insure that all Branch employees, agents, and vendors comply, with all laws, regulations, investor guidelines and other requirements relating to mortgage origination, servicing and operation of the Branch, including without limitation, all applicable requirements of the Department of Housing and Urban Development ("HUD"), the Secretary of Veterans' Affairs ("VA"), Fannie Mae and Freddie Mac, (collectively, "Laws");

C. Employee is subject to and will strictly follow all policies and procedures adopted by Employer, including the Branch Control Policy (attached hereto and incorporated herein as Addendum II) as they may be modified by Employer from time to time.  Failure to comply with such policies and procedures may subject Employee to disciplinary action, which may include termination.   Employee acknowledges having received a copy of Employer's written policies and procedures and agrees that such policies and procedures are hereby incorporated herein by this reference.

Employee represents and warrants to Employer that Employee is fully familiar with and wholly understands such Laws and Employee further understands that Employer is relying on such representation of Employee in agreeing to employ Employee. Employee shall also insure that all Branch personnel comply, with Employer's rules, regulations and policies as set forth in Employer's policy manuals and directives, and all applicable Laws.

2.10 Section intentionally omitted.

2.11 If Employee or any other employee of the Branch (in his/her individual capacity and not as an employee of Employer) enters into an agreement as a principal involving the purchase or sale of real property, or has or will have any interest in such real property, or involving the obtaining or making of a loan on such real property, and Employer is asked to make a loan in connection therewith, Employee shall make immediate written disclosure of the fact of such purchase, sale and loan application to the Employer and prior to any Branch activity in connection with such transaction. Employee agrees that such loan applications, if any, shall be processed at Employer's company headquarters located in Mount Laurel, NJ, and under no circumstance will any such loan applications be processed at the Branch. The restrictions and requirements in this Section 2.11 also apply to Employee and each Branch employee in the event their spouse, parent, child, brother or sister is a principal involving such purchase.

2.12 Employee may not enter into forward loan commitments or other agreements of any kind with any investor.  Such agreements must be presented to Employer for review and execution in accordance with Section 2.4.

2.13 Notwithstanding Section 2.4, Employee, on behalf of Employer, may cause loan commitments and rate lock-in agreements to be issued in accordance with Employer's written policies and procedures.

Revised: April, 2021

Initial

2.14 Employee, on Employer's behalf, shall collect any and all equipment and information issued to a Branch employee upon that employee's termination.  Employee is to refer to Addendum I hereto regarding the Return of Company Property which is hereby incorporated herein by this reference.  If Employee is unable to timely collect such equipment from a branch employee, Employee must report the same to Employer's Human Resources immediately.


ARTICLE III

BRANCH CONTROL POLICY

It is the policy of Employer that all Branches are subject to the control and supervision of the Employer, including the actions of the Branch personnel, who are acting on behalf of Employer and within the scope of their employment.

Employer, not Employee, has sole decision making with the regard to the hiring and termination of Branch personnel.

As used in this Agreement the term "cost center" shall mean a financial account assigned to a branch to which profits and costs may be charged for accounting purposes.

As used in this Agreement the term "MSA" shall mean Marketing Service Agreement, and this is an agreement between AnnieMac Home Mortgage and a party who shall provide bona fide marketing services for AnnieMac Home Mortgage in exchange for a payment for these services.

ARTICLE IV

COMPENSATION

3.1 If the Employee is an Originating Branch Manager then his/her compensation will be detailed in the Loan Compensation Addendum III, attached hereto. If the Employee is a Non-Originating Branch Manager then his/her compensation will be detailed in the Non-Originating Branch Manager Addendum IV, attached hereto.

A. In addition, Employer shall compensate Employee as set forth in Employee's Employment Offer Letter included here as Exhibit A, which is hereby incorporated herein by this reference.

B. In addition, Employee shall be entitled to participate, and shall be included in any savings, 401K, pension, profit sharing, group medical, group disability or similar plan adopted by Employer now existing, or established hereafter, to the extent Employee is eligible under the general provisions thereof. Except as otherwise required by applicable law, Employer may, at its sole discretion, decrease or modify the benefits available to its employees. As permitted by applicable law, Employee shall be required to make contributions to employee benefit programs and Employer shall pay its portion of the same as required by applicable law. If Employer elects to make a matching contribution to Employee's 401k plan, that contribution will not be charged to the Branch cost center.

C. Employer shall withhold Social Security FICA, income tax withholding, and any other federal or state withholding from Employee's total compensation, as required by applicable law.

3.2 Upon termination or separation of employment for any reason, Employee shall be paid all monies due under this Agreement and earned at the time of termination or separation; less any repayable advances and all other monies owed to Employer by Employee which may include without limitation employee contributions to employer sponsored benefit programs.  For purposes of this provision, in the event an Originating Employee resigns or separates from employment for any reason other than for cause, he shall receive his regular Self Generated Lead commission on all mortgage loans that close and fund within 30 days of the separation. Marketing type must be listed as self generated in the Loan Origination System (LOS) on the day the loan funds. Under no circumstance or exception, will an Employee be paid on any loans that fund on or after 31 days of the separation date. In the event that Employee resigns or

separates from employment for any reason, Employee shall forfeit all Company Provided Lead compensation on all loans that close after separation date. In the event that Employee gives advance notice of their resignation, Company reserves the right to accept resignation as effective immediately due to the nature of the business.

3.3 Compensation plan benefits include a leave of absence (LOA) compensation standards policy for originating employees.   Compensation under any LOA provision is permissible when taken in accordance with the Company's Leave of Absence Policy as reflected in the Employee Handbook, Section VII., Time Off & Leaves of Absence.  For specific information and/or questions pertaining to the LOA compensation policy, please contact Human Resources.

3.4 Employer reserves the right unilaterally to modify from time to time Employee's compensation as set forth herein on a prospective basis and upon no less than thirty (30) calendar days notice to Employee.


ARTICLE V

DOCUMENTS AND PERSONNEL

4.1 Employee, during the term of Employee's employment under this Agreement, will have access to various information that is considered to be proprietary and confidential information of Employer, such as, but not all inclusive: forms, procedures, files, records, documents, correspondence, notes, business card files, memoranda, pricing and marketing information, trade secrets, vendor and affiliate information, financial information concerning Employer and its affiliates, computer records, reports, customer (including current, former and prospective customer) lists, printouts, manuals, computer equipment and software, pagers, telephone cards, keys, security cards and other entry devices for access to Employer's facilities or those of Employer's affiliates, and other documents (and all copies thereof) and similar items relating to the business of Employer which are owned by Employer and which are regularly used in the operation of the business of Employer (collectively, "Confidential Materials").

Employee shall not disclose any Confidential Materials or use such material in any way during the term of this Agreement, except as required in the normal course of Employee's employment, and at no time thereafter. All Confidential Materials shall remain the exclusive property of Employer and shall not be copied or reproduced by Employee, in whole or in part, or removed from the premises of Employer under any circumstances whatsoever without the prior written consent of Employer, except as required in the normal course of Employee's employment hereunder. At all times hereafter, Employee will not, except with Employer's express prior written consent, directly or indirectly, provide, communicate, disclose or divulge to any individual, sole proprietorship, joint venture, partnership, corporation, association or any other governmental or non-governmental entity or authority (collectively "Person"), or use for his/her own benefit or the benefit of any Person, any Confidential Materials, no matter when or how acquired, except for information which: (1) is in the public domain without violation of this Agreement or applicable law; or, (2) the disclosure of which is required by applicable law. Employee acknowledges the proprietary nature of the Confidential Materials and understands that the Confidential Materials must be maintained in strict confidence in order for Employer to protect its business and its competitive position in the marketplace.

Employer has and may continue to engage in programs and campaigns to introduce Branch staff to loan referral sources and Employer and Employee agree that all leads, loans and referral relationships that are realized through these Employer sponsored lead generation efforts are the sole property of Employer.  All leads that are generated through an Employer sponsored relationship must be properly identified as such in the company loan origination system by all branch staff.

4.2 Employee shall communicate to Employer and preserve as proprietary information of Employer each discovery, idea, design, customer list, invention and improvement relating in any manner to Employer's business, whether or not patentable and whether or not reduced to practice, which is conceived, developed or made by Employee, whether alone or jointly with others, at any time during the term hereof (such discoveries, ideas, designs, client lists, inventions and improvements are collectively referred to as "Employee's Discoveries"). All of Employee's Discoveries shall be

Revised: April, 2021

Employer's exclusive property, and all of Employee's right, title and interest herein are hereby irrevocably assigned to Employer. Employee shall not, except with Employer's prior written consent, or except in the proper course of his/her employment with Employer, use any of Employee's Discoveries for his/her own benefit or the benefit of any Person, or disclose any of Employee's Discoveries to any Person (other than Employer and Employer's employees) through publication or in any other manner.

4.3 Upon termination of employment with Employer for any reason, or when the Employer may so request, Employee will immediately deliver to the Employer any or all property of Employer in Employee's possession, including but not limited to, Confidential Materials and Employee Discoveries, which Employee may then possess or have under his/her control.

4.4 During the term of Employee's employment and upon termination of employment by Employee or Employer, and for a period of one (1) year thereafter or such longer period provided for under applicable law, Employee expressly covenants and agrees that Employee shall not, either directly or indirectly (1) interfere with the business of Employer; (2) solicit, attempt to hire or hire any personnel (employees, independent contractors or agents of Employer) or any of its subsidiaries, affiliates (other than employees, agents or others assigned to and resident in the Branch) without written approval of Employer; and (3) contact or solicit any of Employer's customers or prospective customers (unless such customers were learned of through the Employee or branch staff self-generated referral sources and applicable Laws expressly permit such contact and/or solicitation). Employee acknowledges that each, every, and any and all prospective borrowers with which Employee comes into contact during the term hereof, whether by referral, direct origination, or marketing, warrants that during the term of this Agreement, Employee shall not introduce any such prospective borrower(s) to any mortgage service provider other than Employer nor to vendors offering the types of services or products offered by Employer's affiliates, other than Employer's affiliates, except as otherwise required under applicable Laws.

4.5 Employer shall make available to Employee training in multiple areas of applicable Laws, including but not limited to, Anti-Money Laundering, Fair Lending, Consumer Privacy and other internal policies and procedures of the Employer, and require Employee to satisfactorily pass such training to insure Employee is made aware of changes to laws and the standards of professionalism as set by and for the mortgage industry and Employer.

ARTICLE VI

ARBITRATION

5.1 Employer and Employee agree to submit to final and binding arbitration for any and all disputes, claims (whether in tort, contract, statutory or otherwise); and disagreements concerning (1) the interpretation or application of this Agreement, (2) Employee's employment by Employer, or (3) the termination of this Agreement and the termination of Employee's employment by Employer, including the ability to arbitrate any such controversy or claim. Any such dispute, claim, or disagreement subject to arbitration pursuant to the terms of this Section 5.1 shall be resolved by arbitration in accordance with the Employment Dispute Resolution Rules ("Arbitration Rules") of the American Arbitration Association ("AAA") in effect at the time of arbitration. The AAA will select a neutral arbitrator pursuant to rules of the AAA Arbitration Rules, as those rules may be amended from time to time. Employer and Employee agree that this arbitration agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1-16. Unless inconsistent with applicable law, each party shall bear the expense of their respective attorneys, experts, witness and filing fees, regardless of which party prevails in the arbitration. Employer and Employee agree that any arbitration hearing will take place in Burlington County, New Jersey. Employee and Employer agree that the decision of the AAA regarding the arbitrator(s) selected hereunder and the arbitrator's decision will be final and binding on both parties. Employer and employee agree that a judgment in a state or federal court with jurisdiction over the parties hereto may be entered upon the award made pursuant to the arbitration without right of further appeal.

Revised: April, 2021

Initial

5.2 Notwithstanding the forgoing, Employer and Employee recognize and acknowledge that in the event of any breach by Employee of any provision of Article IV of this Agreement, irreparable harm will be suffered by Employer and that any remedy available at law will be inadequate and do, therefore, agree that in such event, Employer shall be entitled to such remedies as are available at law or equity to restrain and enjoin Employee from continuing to violate the provisions of this Article IV in any court of competent jurisdiction against Employee and against any other person or entity involved in or connected with such breach, without necessity of posting any bond, cash or security against/for Employee or any other person or entity involved in or connected with such breach, which rights shall be in addition to such rights as Employer may have for damages as the law or equity may provide.

5.3 If Employer must resort to arbitration and/or litigation to enforce any of the provisions in Article IV of this Agreement which has a fixed term, then such term shall be extended for a period of time equal to the period during which a breach of such provision was occurring beginning on the date of a final arbitration decision or court order (without further right of appeal) holding that such a breach occurred or if later, the last day of the original fixed term of such provision.


## ARTICLE VII

## GENERAL PROVISIONS

6.1 This Agreement supersedes any and all other agreements, either oral or in writing between the Parties, with respect to the employment of Employee by Employer and contains all of the covenants and agreements between the Parties with respect to such employment in any manner whatsoever. Except as expressly provided herein, this Agreement may be amended only by an agreement in writing signed by Employer and Employee.

6.2 Employee agrees to execute, acknowledge and deliver or cause to be executed, acknowledged and delivered all such further documents that Employer reasonably deems necessary or appropriate to carry out the terms and provisions of this Agreement.

6.3 No waiver by Employer of any condition, or the breach of any term, covenant, representation or warranty contained herein, whether by conduct or otherwise, by Employee in any one or more instances shall be deemed or construed as a further or continuing waiver of any such condition, representation or warranty set forth in the Agreement.

6.4 The invalidity or unenforceability of any term or provision contained in this Agreement shall not void or impair the remaining provisions hereof, which shall remain in full force and effect as if such invalid or unenforceable provision had never been contained herein.

6.5 Employer may assign its rights and duties hereunder provided that the assignee is the successor, by operation of law or otherwise, to the business of Employer. Employee may not, without the prior written consent of Employer, assign or delegate his/her rights and duties hereunder.

6.6 For the convenience of the parties hereto, any number of counterparts may be executed, and each counterpart shall be deemed an original instrument.

6.7 This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey and federal law. In the event of any litigation, the parties hereto irrevocably consent to the exclusive jurisdiction of the state courts in Burlington County and/or the U.S. District Court for the District of New Jersey in Camden New Jersey.

6.8 This provisions of this Agreement that extend beyond the term of this Agreement shall survive termination of this Agreement and/or termination of Employee's employment with Employer, including Articles IV, V, and VI.

Revised: April, 2021

Initial

6.9 Except to the extent otherwise expressly permitted hereunder, all notices, requests, demands, directions and other communications (collectively, "Notices") under this Agreement shall be sent by first-class mail, or by nationally recognized overnight courier, or by telex or telecopier, or by machine readable electronic transmission, or by personal delivery. All Notices shall be sent to the applicable party at the address provided therefore on the signature page hereto, in all cases with postage or other charges prepaid. Any such properly given Notice shall be effective on the earliest to occur of receipt, machine generated written confirmation of receipt of telexed or telescoped communication, one (1) business day after delivery to a nationally recognized overnight courier, or three (3) business days after deposit in the U.S. Mail.

Revised: April, 2021

Initial

EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS READ, FULLY UNDERSTANDS, ACCEPTS AND AGREES TO BE BOUND BY THIS AGREEMENT AND ALL EXHIBITS ATTACHED HERETO. EMPLOYEE FURTHER ACKNOWLEDGES THAT EMPLOYEE HAS RECEIVED A COMPLETED COPY OF THIS AGREEMENT AND THAT EMPLOYEE HAS BEEN PROVIDED WITH AN OPPORTUNITY TO CONSULT WITH EMPLOYEE'S PRIVATE LEGAL COUNSEL OF EMPLOYEE'S CHOOSING BEFORE EXECUTING THIS AGREEMENT AND THAT EMPLOYEE AVAILED HIMSELF/HERSELF OF THAT OPPORTUNITY TO THE EXTENT EMPLOYEE WISHED TO DO SO.

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

Employee Name: _____Peyton Elizabeth Fullerton_____   Witness Name: _____Travis Olson_____

Employee Signature: _____   Witness Signature: _____

Employee Home Address:

_____5351 Verbena Street_____

_____Denver, CO 80238_____

American Neighborhood Mortgage Acceptance Company LLC

By: _____

       Joseph Panebianco

Title: _____Chief Executive Officer_____

Revised: April, 2021

ADDENDUM I TO BRANCH MANAGER EMPLOYMENT AGREEMENT:

1.      <u>Return of Property</u>.  Employee acknowledges and agrees that Employer may make available to Employee software, computer, telephonic equipment, office furniture, filing cabinets  and other supplies and property for Employee's use during the term of the Agreement solely in connection with the performance of Employee's duties on behalf of Employer.  Employee further acknowledges and agrees that all such software, computer, telephonic equipment, office furniture, filing cabinets, and other supplies and property are and will remain at all times the sole property of Employer.  Employee agrees to return to Employer at Employer's offices all such software, computer, telephonic equipment, furniture, filing cabinets and other supplies and property that have come into Employee's possession on or before the date Employee's employment with Employer terminates.

2.      <u>Computer Software</u>.  Employee acknowledges and agrees that Employer has the right under the terms of the Agreement and the obligation under law to protect certain Confidential Information, including without limitation the non-public personal information of consumers who inquire into, apply for, and/or receive a mortgage loan or other service from Employer (such individuals referred to herein as "Customers"). Employee further agrees that Employee is required under the Agreement and by law to protect Employer's Confidential Information, including without limitation the non-public personal information of Customers.  Employer acknowledges that Employee may from time to time use a personal lap top computer ("Lap Top") to communicate with Employer and/or Customers subject to the terms of the Agreement, applicable law, and solely in furtherance of the Employee's employment with Employer.  In connection therewith and subject to the terms of the Agreement and this Addendum I, Employer may permit Employee access to certain computer software, other computer technology, and equipment.  In exchange for such access and use of certain computer software of Employer, Employee agrees as follows:

        (a)      Employee shall only access Employer's computer software, other computer technology, and equipment: (i) that Employer has expressly authorized Employee to access in writing; (ii) in furtherance of the Employee's employment with Employer and for no other reason or purpose; (iii) as permitted under the terms of the Agreement and applicable law, including without limitation those laws providing for or requiring the protection and security of the non-public personal information of Customers; and (iv) subject to and in compliance with any licensing agreements to which Employer is a party;

        (b)      Employee shall immediately cease using and return to Employer all copies of any computer software, other computer technology, and equipment provided by Employer if Employee's employment with Employer is terminated or if the Employee resigns or otherwise terminates his employment with Employer;

        (c)      Employee expressly consents, authorizes, and agrees that Employer shall have the right from time to time, and at any time, to install encryption or other security computer software on any Lap Top owned by Employee that Employee uses or intends to use to communicate with Employer or any Customers;

        (d)      Employee agrees not to reverse engineer, decompile, disassemble or apply any process, technique, or procedure or make any attempt to disable, remove, destroy, or otherwise modify any of Employer's computer software; and,

        (e)      Employee expressly consents, authorizes, and agrees that Employer shall have the right to disable, remove, destroy, or otherwise modify any of Employer's computer software that is located on or accessed through any Lap Top owned by Employee that Employee uses or intends to use to communicate with Employer or any Customers from time to time, and at any time, including without limitation if Employee's employment with Employer is terminated or if the Employee resigns or otherwise terminates his employment with Employer.  In the event Employer elects to disable, remove, destroy, or otherwise modify any of Employer's computer software that is located on or accessed through any Lap Top owned by Employee that Employee uses or intends to use to communicate with Employer or any Customers, Employee agrees that Employer shall not be liable to Employee for any damage to or decrease in functionality of such Lap Top as a result of Employer's exercise of such right.

Revised: April, 2021

Initial

DocuSign Envelope ID: DF497574-191D-4898-9D52-E22A0955A57C

3. <u>Survival</u>.  The provisions of this Addendum I shall survive the termination of the Agreement.

ADDENDUM II TO BRANCH MANAGER EMPLOYMENT AGREEMENT

Branch Control Policy

*All references to Employer refer to American Neighborhood Mortgage Acceptance Company LLC.*

It is the policy of Employer that all Branches are under the control of the licensee (American Neighborhood Mortgage Acceptance Company LLC) and the Licensee accepts full responsibility for the actions of the Branch personnel so long as they are acting within the scope of their employment.

Employer, not Employee, has sole decision making with the regard to the hiring and termination of staff.

Branch Manager:

Peyton Elizabeth Fullerton
_____
Printed Name

_____
Signature

Employer / Licensee: American Neighborhood Mortgage Acceptance Company LLC

By: _____

Name:    Joseph Panebianco

Title:    Chief Executive Officer

Revised: April, 2021

Initial

DocuSign Envelope ID: DF497574-191D-4898-9D52-E22A0955A57C

## ADDENDUM III TO BRANCH MANAGER EMPLOYMENT AGREEMENT
### LOAN COMPENSATION ADDENDUM

*All references to Employer refer to American Neighborhood Mortgage Acceptance Company LLC.*

I.        Policy for Originating Branch Manager Compensation

(a)        It is the policy of Employer to compensate its Originating Branch Managers in compliance with the Truth In Lending Act and its implementing Regulation Z, 12 C.F.R. § 1026.36  This policy, as set forth in greater detail below, shall be implemented by (1) providing all Originating Branch Managers with a copy of this Policy; and (2) including terms in each Originating Branch Manager's compensation which comply with this Policy; (3) staff training; and (4) borrower disclosure to prevent steering.

(b)        Employer will not compensate its Originating Branch Managers based on a "term of the transaction" (as such terms is defined under Regulation Z).  Consistent with this Policy and subject to Regulation Z, the following types of compensation (among others) are prohibited:

1.   Compensation based on the loan's interest rate or APR;
2.   Compensation based on the loan to value ratio;
3.   Compensation based on the existence of a prepayment penalty, the fees collected or other loan specific terms;
4.   Compensation based on the borrower's credit score;
5.   Compensation based on CRA eligibility;
6.   Compensation based on the existence of mortgage insurance;
7.   Compensation based on the profitability of the loan; or
8.   Compensation based on the loan type.

(c)        Consistent with this Policy and subject to Regulation Z, the following types of compensation (among others) are permitted:

1.   The Originating Branch Manager's overall loan volume, whether it be dollar amount of credit extended or total number of loans originated;
2.   The long term performance of the loans originated;
3.   Whether the customer is an existing customer or a new customer;
4.   A fixed payment for each loan originated;
5.   The percentage of applications that result in consummated transactions;
6.   The quality of the Originating Branch Manager's loan files submitted to the creditor; and
7.   A legitimate business expense, such as fixed overhead costs.

(d)        When Employer is acting as a broker in a transaction, it is Employer's policy that a Originating Branch Manager shall not "steer" a consumer to a particular loan based on the fact that the originator will receive greater compensation from the creditor in that transaction than in other transactions the originator offered or could have offered to the consumer, unless it is in the consumer's interest.  To ensure that such steering does not occur, the Originating Branch Manager must obtain loan options from a significant number of the creditors (usually three or more) with which Employer regularly does business.  For each type of transaction in which the consumer expressed an interest, the Originating Branch Manager must present the consumer with loan options that include (a) the loan with the lowest interest rate; (b) the loan with the lowest interest rate without negative amortization, a prepayment penalty, interest-only payments, a balloon payment in the first seven years of the loan, a demand feature, shared equity or appreciation or, in the case of a reverse mortgage loan, a loan without a prepayment penalty or shared equity or appreciation; and (c) the loan with the lowest total dollar amount for origination points or fees and discount points.

Revised: April, 2021

Initial

II.    Initial Compensation Schedule

(a.)    Employee compensation will be a semi-monthly salary in the amount of ███████, against combined commission, override and/or BBA Distribution (as applicable). This salary will be paid in accordance with AnnieMac standard payroll procedures subject to applicable state and federal tax withholdings and deductions for employee contributions to employer sponsored insurance benefits.

Commissions, overrides and/or BBA Distributions earned by Employee in any given month shall be netted against his/her monthly salary.  If Employee's combined commission, override and/or BBA Distribution for the month exceeds ███████████████, Employee will be paid the excess amount on the 25th day of the following month. If Employee combined commission, override and/or BBA Distribution for the month is less than or equal to ████████, Employee will receive no compensation for that month other than his/her salary.

(b.)    Employee will receive a retention bonus* in the amount of $250,000.00 per pay period for the following pay dates only:

- July 8, 2022;
- July 25, 2022.

This retention bonus will be paid in accordance with AnnieMac standard payroll procedures subject to applicable state and federal tax withholdings and deductions for employee contributions to employer sponsored insurance benefits. This retention bonus will not exceed $500,000.00. In the event that Employee resigns or separates from employment for any reason, all retention bonus compensation scheduled to be paid after separation date shall be forfeited immediately.

*In the event that Employee voluntarily terminates employment with the Company or employment with the Company is terminated for cause at any point prior to the expiration of eighteen (18) months following receipt of the retention bonus, Employee agrees that he or she will be responsible for reimbursing the Company for the balance of this retention bonus paid to Employee. Any repayment amount due shall become due and payable to the Company immediately upon demand. Employee hereby authorizes said payment, should it become necessary, to be deducted from any severance or final pay received upon termination of employment. Should it become necessary for the Company to collect any payment due, Employee agrees to pay the Company for all reasonable costs of collection and/or litigation, including necessary and reasonable attorneys' fee.

(c.)    Commission Schedule.
(i.)    Employer shall pay Employee compensation in the form of commission based on the following schedule. The schedule is based on basis points or a percentage of the loan amount. In accordance with Section 3(b) of the Loan Originator Agreement, all commissions are paid based upon the compensation plan in effect at the time the loan is funded. Commissions are earned only if the mortgage loan originated by Loan Originator is funded and are limited by any commission caps. All commissions are paid based upon the compensation plan in effect at the time the loan is funded. Employer shall pay commissions to Employee as follows:  (i) if the commission is earned in the first payment period of the month, the commission is payable on the 10th of the succeeding month; and (ii) if the commission is earned in the second payment period of the month, the commission is payable on the 25th of the succeeding month.   Commissions, overrides and/or BBA Distributions earned by Employee in any given month shall be netted against his/her monthly salary.  If Employee's combined commission, override and/or BBA Distribution for the month exceeds ████████, Employee will be paid the excess amount on the 25th day of the following month.  If Employee's combined commission, override and/or BBA Distribution for the month is less than or equal to ████████, Employee will receive no compensation for that month other than his/her salary.

The maximum commission you can earn on any loan is capped at ████████.

Revised: April, 2021

Initial

DocuSign Envelope ID: DF497574-191D-4898-9D52-E22A0955A57C

| Tier Type: FLAT | | | |
|---|---|---|---|
| Marketing Channel | Tier | Monthly Volume | Compensation (bps) |
| Personal | Tier 1 | ≤ $500,000 | ████ bps |
| | Tier 2 | > $500,000 ≤ 1MM | ████ bps back to dollar one |
| | Tier 3 | > 1MM ≤ 1.5MM | ████ bps back to dollar one |
| | Tier 4 | >1.5MM ≤ 2MM | ████ bps back to dollar one |
| | Tier 5 | > 2MM | ████ bps back to dollar one |

| Marketing Channel | Compensation (bps) |
|---|---|
| Company | ████ bps |

Marketing Channels are independent of each other for tier calculation. As a result, Company provided lead production is not included in the Personal Marketing Channel tier calculation for total funded volume in the month; and Personal Marketing Channel production is not included in the Company provided calculations. In the event Loan Originator fails to select accurate marketing type, loans will fund according to the marketing type listed in the Loan Origination System (LOS) at the time of funding; compensation will be paid based on marketing type selected in the LOS on the funding date. Marketing type is considered accurate and final as of the date the loan funds and cannot be adjusted. Reverse mortgage production is not considered a component of either of the channels and is therefore, calculated on a standalone basis as described below in the section on Reverse Mortgages. Reassigned loan production from loans that are reassigned due to the initial Loan Originator separating from Company is not considered a component of Personal or Company provided Marketing Channels and is therefore, calculated on a standalone basis as described in the section below regarding Reassigned Loan Compensation.

       (ii.)      Notwithstanding the foregoing Section (2)(c)(i), regardless of the date that a commission is advanced to Employee, the Company may categorize a commission as unearned if, as a result of the loan being placed into a forbearance status in accordance with Section 4022 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020:

- An investor with whom Company has entered into a Mortgage Loan Purchase Agreement (or substantially similar instrument) ("MLPA") declines to purchase the loan or purchases it at a discount from the price anticipated under the terms of the MLPA.
- A government-sponsored entity (Fannie Mae or Freddie Mac) declines to purchase the loan or purchases it after only after applying the loan level pricing adjustment associated with loans in forbearance.
- A government agency declines to insure or guarantee the loan.

Company reserves the right to recover any commissions advanced to Employee and subsequently deemed unearned upon the occurrence of any of the events delineated in this Section 2(c.)(ii.).

     (d.)     Reassigned Loans. At the time a Loan Originator is separated from employment,  all loans in that Loan Originator's pipeline will be reassigned to a new Loan Originator. The newly assigned Loan Originator will be eligible to receive a fixed dollar commission on the loan if the loan closes and funds. The fixed dollar amount will vary based on the loan status at the time of reassignment:

- If the loan has not yet reached the conditional underwriting approval milestone, the commission will be ████████.
- If the loan has reached the conditional underwriting approval milestone, the commission will be ████████.

Should the newly assigned Loan Originator separate from employment with Company for any reason, the newly assigned Loan Originator shall forfeit all compensation on all reassigned loans that close and fund after separation date.

In the event that a loan is reassigned due to a borrower complaint, the initial Loan Originator will not receive any compensation on that loan. The newly assigned Loan Originator will be eligible for commission on the loan under their current compensation plan if the loan closes and funds. Loans assigned to a new Loan Originator due to borrower complaint will be assigned as Company provided and will be calculated as such for tier calculation.

Revised: April, 2021

DocuSign Envelope ID: DF497574-191D-4898-9D53-E22A0955A57C

   (e.) **Temporary Authority to Operate** The Economic Growth, Regulatory Relief, and Consumer Protection Act of 2018 added a section to the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 ("SAFE Act") entitled "Employment Transition of Loan Originators". This section permits certain individuals applying for a mortgage loan originator license to receive "Temporary Authority" to originate loans while his or her state license application is being processed by a state regulatory agency. The Company, at its sole discretion, may permit the Loan Originator to conduct business under Temporary Authority.

Immediately upon Company's receipt of notice that a Loan Originator's Temporary Authority to operate in a state has been terminated for any reason other than approval of his or her license application, all loans in that Loan Originator's pipeline – regardless of current status -- will be reassigned to a new Loan Originator. The Loan Originator shall forfeit all compensation on such reassigned loans.

The newly assigned Loan Originator shall be compensated in the manner set forth in Subsection (d) above.

   (f.) Reverse Mortgages. For reverse mortgages only, basis points will be paid according to the *maximum claim amount*, not the loan amount and in accordance with your most recently executed compensation plan. The maximum claim amount on a reverse loan is defined as the lesser of a home's appraised value or the maximum dollar amount that can be insured by FHA and is used in determining the principal limit (*for the full definition of maximum claim amount, please see 24 CFR 206.3*). This amount does not fluctuate after the loan is closed, whereas the loan amount, as referred to in reverse terms, can change, depending upon how a borrower opts to access the available funds (i.e., lump sum at closing, line of credit, defined monthly installments or a combination thereof). In accordance with marketing channel provisions referenced above, reverse mortgage production is calculated as standalone only and basis points are calculated at the Loan Originator's base personal rate, and not subject to tier calculations.

Peyton Elizabeth Fullerton   6/27/2022
_____

Print Name / Date

_____

Signature

Initial

## ADDENDUM IV TO BRANCH MANAGER EMPLOYMENT AGREEMENT
### NON-ORIGINATING BRANCH MANAGER COMPENSATION ADDENDUM

***Intentionally Omitted***

Initial

## ADDENDUM V TO BRANCH MANAGER EMPLOYMENT AGREEMENT
### NON-ORIGINATING BRANCH MANAGER BRANCH CLOSEOUT POLICY

***Intentionally Omitted***

EXHIBIT A. EMPLOYMENT OFFER LETTER

## Addendum to Loan Compensation Agreement

**Effective Date**:    This Addendum applies to all loans originated, closed and funded on or after August 1, 2022.

This document shall serve as notification that AnnieMac Home Mortgage ("Employer") is amending the Loan Compensation Addendum to your Loan Originator Employment Agreement or Branch Manager Employment Agreement (whichever is applicable), as follows:

**Brokered Loans**    Effective August 1, 2022, on all loans originated by Employee and brokered by Employer to a third-party lender, Employee shall receive compensation in the form of commission equal to                                    of the loan amount.  Commissions are earned only when the loan originated Loan Originator is closed, funded, and compensation is paid to AnnieMac by the third-party lender. This additional compensation will take into account any commission caps. In accordance with marketing channel provisions referenced above, brokered loan production is calculated as standalone only, and not subject to tier calculations. Referral compensation does not apply to Brokered loan production.

By signing below, you acknowledge and agree to the provisions of this Addendum and recognize that this is an amendment to your Employee Agreement which was previously signed by you.

The Company continues to reserve the right to change your compensation in the future.  Any such revisions will comply with applicable federal and state laws, regulations and rules.

EMPLOYEE                                                    EMPLOYER

X _____                By: _____ Joseph Panebianco _____

          FULLERTON, PEYTON ELIZABETH
Employee: _____       Title: _____ Chief Executive Officer _____

          09/15/2022
Dated: _____       Dated: _____ August 1, 2022 _____

## Addendum to Loan Compensation Agreement

**Effective Date**:   This Addendum applies to all loans originated, closed and funded on or after September 1, 2022.

This document shall serve as notification that AnnieMac Home Mortgage ("Employer") is amending the Loan Compensation Addendum to your Loan Originator Employment Agreement or Branch Manager Employment Agreement (whichever is applicable), as follows:

**Brokered Loans**   Effective September 1, 2022, Loan Originator shall receive compensation in the form of commission equal to                                                of the loan amount, for brokered non-HELOC first lien transactions only. Compensation will not be paid on brokered HELOC first or second lien transactions, closed end second transactions or Bridge loan transactions. Commissions are earned only when the loan originated by Loan Originator is closed, funded, and compensation is paid to AnnieMac by the third-party lender. This additional compensation will be capped at           In accordance with marketing channel provisions referenced above, brokered loan production is calculated as standalone only, and not subject to tier calculations. Referral compensation does not apply to Brokered loan production.

By signing below, you acknowledge and agree to the provisions of this Addendum and recognize that this is an amendment to your Employee Agreement which was previously signed by you.

The Company continues to reserve the right to change your compensation in the future.  Any such revisions will comply with applicable federal and state laws, regulations and rules.

EMPLOYEE

EMPLOYER

X ~~ee_A2FJ62be0f63cae0a_1549965~~

FULLERTON, PEYTON ELIZABETH
Employee:

By: _____ Joseph Panebianco

Title: _____ Chief Executive Officer

Dated 09/15/2022

Dated: _____ September 1, 2022

LO Addendum – OBM (September 2022)

Page **1** of **1**